**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| HHGREGG, INC., *et al.*, | : | Case No.: 17-01302-RLM-11 |
| | | (Jointly Administered) |
| Debtors. | : | |
| | | |
| WHIRLPOOL CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | Adversary Proceeding No.: 17-50104 |
| HHGREGG, INC., GREGG APPLIANCES, INC., HHG DISTRIBUTING LLC, WELLS FARGO, NATIONAL ASSOCIATION; GACP FINANCE CO., LLC; HILCO MERCHANT RESOURCES, LLC, AND GORDON BROTHERS RETAIL PARTNERS, LLC, | : | |
| Defendants. | | |

**DEFENDANTS hhgregg, INC., HHG DISTRIBUTING LLC, AND GREGG
APPLIANCES, INC.'S ANSWER, SPECIFIC DEFENSES AND COUNTERCLAIM**

Defendants hhgregg, Inc. ("hhgregg"), HHG Distributing LLC ("HHG Distributing"), and Gregg Appliances, Inc. ("Gregg Appliances") (each a "Debtor" and collectively, the "Debtors" or "Defendants") file this Answer (the "Answer") to the Complaint (Dkt. No. 1) of Whirlpool Corporation ("Whirlpool" or "Plaintiff") as well as Debtors' Counterclaim for breach of contract and avoidance and recovery of preferences.[1]   To the extent any allegations in the Complaint are not expressly admitted, they are denied.  Any averment by Debtors that it lacks

---

[1] Unless stated otherwise herein, all undefined capitalized terms appearing in this document shall have the meanings ascribed to such terms in the Complaint.

knowledge or information sufficient to form a belief about the truth of an allegation shall have the effect of a denial.

## THE PARTIES

**ALLEGATION NO. 1:**

Whirlpool is a Delaware corporation with its principal place of business located at 2000 N M-63, Benton Harbor, Michigan 49022.

**RESPONSE TO ALLEGATION NO. 1:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 1; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 1.

**ALLEGATION NO. 2:**

Defendants hhgregg, Inc.; Gregg Appliances, Inc.; and HHG Distributing, LLC (collectively, "Debtor") are organized under the laws of the State of Indiana with their principal place of business located at 4151 East 96111 Street, Indianapolis, Indiana, 46240 and are debtors-in-possession in this case.

**RESPONSE TO ALLEGATION NO. 2:**

Admitted.

**ALLEGATION NO. 3:**

Defendant Wells Fargo, National Association ("Wells") is a national association bank with its principal place of business in Sioux Falls, South Dakota. Wells is the Administrative Agent, Collateral Agent, and FILO Agent under the Prepetition Credit Agreement, and the Administrative Agent and Collateral Agent under the DIP Credit Agreement.

**RESPONSE TO ALLEGATION NO. 3:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 3; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 3.

**ALLEGATION NO. 4:**

Defendant GACP Finance Co., LLC ("GACP"), is the FILO Agent under the DIP Credit Agreement. Upon information and belief, GACP's principal place of business is in Los Angeles, California. (Wells and GACP are collectively referred to herein as "Lenders.")

**RESPONSE TO ALLEGATION NO. 4:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 4; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 4.

**ALLEGATION NO. 5:**

Hilco Merchant Resources, LLC ("Hilco") is an Illinois limited liability company with its principal place of business located at 5 Revere Drive, No. 300, Northbrook, Illinois, 60062.

**RESPONSE TO ALLEGATION NO. 5:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 5; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 5.

**ALLEGATION NO. 6:**

Gordon Brothers Retail Partners, LLC ("Gordon Brothers") is a Massachusetts limited liability company with its principal place of business located at Prudential Tower, 800 Boylston Street, 27th Floor, Boston, Massachusetts, 02199. Hilco and Gordon Brothers (the "Liquidators") are liquidators Debtor is proposing to retain to conduct both "Phase I" and "Phase II" liquidation sales at Debtor's stores.

**RESPONSE TO ALLEGATION NO. 6:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 6; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 6.

## JURISDICTION AND VENUE

**ALLEGATION NO. 7:**

This Court has exclusive jurisdiction over this proceeding under sections 157(b) and 1334 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

**RESPONSE TO ALLEGATION NO. 7:**

Debtors state that the allegations in paragraph 7 are contentions of law for which no response is required.

**ALLEGATION NO. 8:**

This matter is a core proceeding under Bankruptcy Code § 157(b)(2).

**RESPONSE TO ALLEGATION NO. 8:**

Debtors state that the allegations in paragraph 8 are contentions of law for which no response is required.

## ALLEGATION NO. 9:

Venue is proper in this District under 28 U.S.C. § 1409(a).

## RESPONSE TO ALLEGATION NO. 9:

Debtors state that the allegations in paragraph 9 are contentions of law for which no response is required.

## ALLEGATION NO. 10:

Whirlpool is entitled to the relief requested under 28 U.S.C. §§ 2201 and 2202 as well as Bankruptcy Code §§ 105 and 546(c); Rule 7065 of the Federal Rules of Bankruptcy Procedure; Rule 65 of the Federal Rules of Civil Procedure; and Ind. U.C.C. § 2-702 (Ind. Code Ann. § 26-1-2-702).

## RESPONSE TO ALLEGATION NO. 10:

Debtors state that the allegations in paragraph 10 are contentions of law for which no response is required.

## FACTUAL BACKGROUND

## ALLEGATION NO. 11:

Whirlpool manufactures, markets, and sells home appliances, including ranges, ovens, washers, dryers, refrigerators, and microwave ovens under various brand names, including, without limitation, Whirlpool, KitchenAid, Amana, Maytag, Hotpoint and Swash.

## RESPONSE TO ALLEGATION NO. 11:

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 11; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 11.

## ALLEGATION NO. 12:

Whirlpool sold Whirlpool goods to Debtor in the ordinary course of business on 15-day terms under purchase orders Debtor placed with Whirlpool, with Whirlpool invoicing Debtors for the cost of goods sold to Debtor.  Debtor paid for the goods in the ordinary course of business via ACH transfers.

**RESPONSE TO ALLEGATION NO. 12:**

Debtors admit that Whirlpool sold goods to the Debtors under purchase orders Debtors placed with Whirlpool and that Whirlpool issued invoices to the Debtors. Debtors deny the remaining allegations of paragraph 12.

**ALLEGATION NO. 13:**

On March 6, 2017, Debtor filed Chapter 11 bankruptcy petitions in this Court (the "Petition Date").

**RESPONSE TO ALLEGATION NO. 13:**

Admitted.

**ALLEGATION NO. 14:**

In the weeks leading up to the Petition Date, Whirlpool continued to sell goods to Debtor on 15-day terms.

**RESPONSE TO ALLEGATION NO. 14:**

Debtor admits that Whirlpool sold goods to Gregg prior to the Petition Date. Debtors deny the remaining allegations in paragraph 14.

**ALLEGATION NO. 15:**

As of the Petition Date, Debtor owed Whirlpool $3,244,159.95 (the "Pre-Petition Claim"). A statement of this pre-petition accounts receivable balance is attached as Exhibit A.

**RESPONSE TO ALLEGATION NO. 15:**

Debtors deny the first sentence of paragraph 15. Debtors admit that a statement is attached as Exhibit A to the Complaint, and deny the remaining allegations in paragraph 15.

**A.     The Reclamation Demand**

**ALLEGATION NO. 16:**

Within 45 days immediately before the Petition Date, Debtor received certain goods that Whirlpool sold to Debtor (the "Reclaimed Goods").

**RESPONSE TO ALLEGATION NO. 16:**

Debtors admit that Gregg received goods from Whirlpool in the 45 days prior to the Petition

Date.  Debtors deny the remaining allegations in paragraph 16.

**ALLEGATION NO. 17:**

On March 10, 2017, Whirlpool sent a written demand for reclamation to Debtor demanding the
return of the Reclaimed Goods (the "Demand").  A copy of the Demand is attached as Exhibit B.
The Reclaimed Goods have an aggregate value of $16,264,325.00.

**RESPONSE TO ALLEGATION NO. 17:**

Debtors admit that Exhibit B to the Complaint is a true and correct copy of the Demand sent by

Whirlpool.  Debtors further state that the Demand speaks for itself and Debtors deny any all

allegations in paragraph 17 to the extent they do not fully and accurately characterize the content

of the Demand or otherwise seek to characterize the purpose of any given provision of the

Demand.  Debtors deny the remaining allegations in paragraph 17.

**B.    The Prepetition Credit Agreement and DIP Motion**

**ALLEGATION NO. 18:**

Debtor is a party to an Amended and Restated Loan and Security Agreement dated March 29,
2011, as amended (the "Prepetition Credit Agreement"), as more fully set forth in Debtor's
*Motion for Interim and Final Orders (I) Authorizing Debtor in Possession to  Obtain Post-
Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, 364; (II) Granting Liens  and
Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. § 364 and 507; (III)
Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition
Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and
364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and
Local Rule 4001-2* (the "DIP Motion") [Dkt. No. 18].  (*See, e.g.*, Dkt. No. 18 TR 6-8.)

**RESPONSE TO ALLEGATION NO. 18:**

Debtors admit that Gregg (as Borrower) and HHG Distributing, LLC (as Guarantor) are parties

to that certain Amended and Restated Loan and Security Agreement dated as of March 29, 2011

(the "Prepetition Credit Agreement").

**ALLEGATION NO. 19:**

Wells is the Administrative Agent, Collateral Agent, and FILO Agent under the Prepetition
Credit Agreement.

**RESPONSE TO ALLEGATION NO. 19:**

Debtors admit that Wells Fargo is party to the Prepetition Credit Agreement as the Administrative Agent and the Collateral Agent; the remaining allegations in Paragraph 19 are denied.

**ALLEGATION NO. 20:**

Under the Prepetition Credit Agreement, Debtor granted Wells a security interest in and lien upon all "Collateral" as defined in the Prepetition Credit Agreement, which includes Debtor's inventory and the Reclaimed Goods. (*Id.* ¶ 8.)

**RESPONSE TO ALLEGATION NO. 20:**

Debtors state that the Prepetition Credit Agreement speaks for itself and Debtors deny any allegations in paragraph 20 to the extent they do not fully and accurately characterize the content of the Prepetition Credit Agreement or otherwise seek to characterize the purpose of any given provision of the Prepetition Credit Agreement.

**ALLEGATION NO. 21:**

Upon information and belief, Wells—as Debtor's primary pre-petition secured lender that provided Debtor access to up to a $300,000,000 credit facility—was fully informed and aware of Debtor's financial condition in the months leading up to the Petition Date.

**RESPONSE TO ALLEGATION NO. 21:**

Debtors admit that Wells was a pre-petition secured lender that provided access to a $300,000,000 credit facility. Debtors lack sufficient knowledge or information to admit or deny the remaining allegations in paragraph 21; therefore, to the extent a response is required, Debtors deny the remaining allegations in paragraph 21.

**ALLEGATION NO. 22:**

Upon information and belief, Debtor was insolvent at least as of 45 days prior to the Petition Date.

**RESPONSE TO ALLEGATION NO. 22:**

Debtors state that the allegations of paragraph 22 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 22.

**ALLEGATION NO. 23:**

Upon information and belief, Wells was aware that Debtor was insolvent 45 days prior to the Petition Date and at the time that Debtor received the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 23:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 23; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 23.

**ALLEGATION NO. 24:**

Upon information and belief, Wells was aware that Debtor could not and would not pay Whirlpool for all the Reclaimed Goods at the time Debtor received them.

**RESPONSE TO ALLEGATION NO. 24:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 24; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 24.

**ALLEGATION NO. 25:**

Upon information and belief, Wells leveraged the Reclaimed Goods, knowing that Debtor would not pay Whirlpool, to secure extensions of credit under the Prepetition Credit Agreement—loans that Wells knew Debtor needed to continue to operate in the ordinary course.

**RESPONSE TO ALLEGATION NO. 25:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph 25; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 25.

**ALLEGATION NO. 26:**

Upon information and belief, Wells financed Debtor's continued operation in order to perpetuate Debtor as the best vehicle to orderly liquidate Wells' collateral and maximize Wells' recovery.

**RESPONSE TO ALLEGATION NO. 26:**

Debtors lack sufficient knowledge or information to admit or deny the allegations in paragraph

26; therefore, to the extent a response is required, Debtors deny the allegations in paragraph 26.

**ALLEGATION NO. 27:**

As set forth in the DIP Motion and the order granting the DIP Motion on an interim basis ("Interim DIP Order") [Dkt. No. 50], a DIP financing agreement was approved on an interim basis (the "DIP Financing Agreement") [Dkt. No. 18 at Ex B (DIP Financing Agreement)].

**RESPONSE TO ALLEGATION NO. 27:**

Admitted.

**ALLEGATION NO. 28:**

Wells is the Administrative Agent and the Collateral Agent under the DIP Financing Agreement, with GACP serving as the FILO Agent. Under the Interim Dip Order, Wells and GACP (collectively, the "Lenders") are granted a "first priority priming, valid, perfected, and enforceable Liens . . . and the Permitted Prior Liens . . . upon the DIP Collateral," which includes Debtor's pre-petition inventory.

**RESPONSE TO ALLEGATION NO. 28:**

Debtors admit that Wells Fargo is party to the DIP Financing Agreement as the Administrative

Agent and the Collateral Agent and that GACP is a party to the DIP Financing Agreement as the

FILO Agent.  By way of further response, Debtors state that the DIP Financing Agreement and

Interim Dip Order speak for themselves and Debtors deny any allegations in paragraph 28 to the

extent they do not fully and accurately characterize the content of the DIP Financing Agreement

and Interim Dip Order or otherwise seek to characterize the purpose of any given provision of

the Prepetition Credit Agreement or Interim Dip Order.

**ALLEGATION NO. 29:**

Whirlpool filed a limited objection to the DIP Motion, objecting to approval of the DIP Motion on a final basis, among other reasons, to the extent the DIP Financing Agreement purported to grant Lenders priority in the Reclaimed Goods in contravention of UCC 2-702 and Bankruptcy Code § 546(c).  [Dkt. No. 426.]

**RESPONSE TO ALLEGATION NO. 29:**

Debtors admit that Whirlpool filed a limited objection to the DIP Motion. By way of further response, Debtors state that Whirlpool's limited objection speaks for itself and Debtors deny any allegations in paragraph 29 to the extent they do not fully and accurately characterize the content of Whirlpool's limited objection or otherwise seek to characterize the purpose of any given provision of Whirlpool's limited objection.

## C.     Debtor Continues to Sell the Reclaimed Goods

**ALLEGATION NO. 30:**

To date, Debtor continues to sell the Reclaimed Goods despite Whirlpool's timely Demand. Whirlpool cannot determine the amount of Reclaimed Goods that remain in Debtor's possession, but absent the Court enjoining continued sales of the Reclaimed Goods, Whirlpool will be irreparably harmed. Specifically, but without limitation, the Reclaimed Goods will be transferred to buyers free of Whirlpool's interest in the Reclaimed Goods, and proceeds from the sale of the Reclaimed Goods will be paid to the Lenders.

**RESPONSE TO ALLEGATION NO. 30:**

Debtors admit that Gregg continues to sell goods received from Whirlpool. Debtors deny the remaining allegations in paragraph 30.

**ALLEGATION NO. 31:**

Further, there is no assurance that the Pre-petition Claim will be paid in full, notwithstanding the fact the Pre-petition Claim is entitled to priority under Bankruptcy code §503(b)(9). See *Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C §§ 105, 362, 363, And 364, (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 And 507; (III) Authorizing the use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. 361, 362, 363 and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and Local Rule 4001-2* [Dkt. No. 311]( "If the DIP Facility is approved as proposed, the DIP Secured Parties would receive exorbitant fees and obtain all of the benefits of chapter 11, without sufficiently providing for the costs and expenses of administering these cases. These costs include postpetition "stub" rent . . . and claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code for goods received by the Debtors in the 20-day period prior to the Petition Date.").

**RESPONSE TO ALLEGATION NO. 31:**

Debtors state that the first sentence of paragraph 31 contains contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in the first sentence of paragraph 31. By way of further response, Debtors state that the Objection of the Official Committee of Unsecured Creditors speaks for itself and Debtors deny any allegations in paragraph 31 to the extent they do not fully and accurately characterize the content of the Objection or otherwise seek to characterize the purpose of any given provision of the Objection.

**ALLEGATION NO. 32:**

Finally, Whirlpool's right to recover actual possession of the Reclaimed Goods is a possessory right that is not compensable through a money judgment and as a result, Whirlpool will suffer irreparable harm if the Reclaimed Goods are not returned to Whirlpool.

**RESPONSE TO ALLEGATION NO. 32:**

Denied.

**ALLEGATION NO. 33:**

Upon information and belief, Wells is not, within the meaning of § 2-702 of the Uniform Commercial Code, a good faith purchase or buyer in the ordinary course and, as such, does not have a priming lien with respect to Whirlpool's reclamation claim in the Reclaimed Goods or proceeds from the Reclaimed Goods under Bankruptcy Code § 546(c).

**RESPONSE TO ALLEGATION NO. 33:**

Debtors state that the allegations of paragraph 33 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 33.

**ALLEGATION NO. 34:**

As a result, Whirlpool's right to the  Reclaimed Goods and proceeds of the Reclaimed Goods is not subject to Lenders' lien in the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 34:**

Debtors state that the allegations of paragraph 34 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 34.

## ALLEGATION NO. 35:

In addition, the Financing Motion and Interim Order provide that all cash, collections, and proceeds of the Pre-Petition Collateral and DIP Collateral are to be paid to the Pre-Petition Agent for application in reduction of the Pre-Petition Credit Agreement Loans and that upon entry of the Final Order, the Debtors will apply proceeds of the DIP Credit Agreement to pay all remaining Pre-Petition Secured Debt in full (the "Roll-Up").

## RESPONSE TO ALLEGATION NO. 35:

Debtors state that the Financing Motion and Interim Order speak for themselves and Debtors deny any allegations in paragraph 35 to the extent they do not fully and accurately characterize the content of the Financing Motion and Interim Order or otherwise seek to characterize the purpose of any given provision of the Financing Motion and Interim Order.

## ALLEGATION NO. 36:

Even if Wells qualifies as a good faith purchaser, to the extent Loans under the Pre-Petition Credit Agreement have been "rolled-up," Whirlpool's reclamation claim is first in priority and right. *In re Reichhold Holdings US, Inc.*, 556 B.R. 107 (Bankr. D. Del. 2016).

## RESPONSE TO ALLEGATION NO. 36:

Debtors state that the allegations of paragraph 36 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 36.

## COUNT I
### (Declaratory Judgment Against Defendants)

## ALLEGATION NO. 37:

Whirlpool repeats and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth here.

## RESPONSE TO ALLEGATION NO. 37:

Debtors repeat and re-allege their responses to paragraphs 1-36.

**ALLEGATION NO. 38:**

Debtor was insolvent at the time it received the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 38:**

Debtors state that the allegations of paragraph 38 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 38.

**ALLEGATION NO. 39:**

The Reclaimed Goods were sold to Debtor in the ordinary course of business.

**RESPONSE TO ALLEGATION NO. 39:**

Debtors admit that Gregg received goods from Whirlpool.  Debtors deny the remaining allegations in paragraph 39.

**ALLEGATION NO. 40:**

Whirlpool timely made a Demand seeking immediate reclamation of the Reclaimed Goods from Debtor in writing (a) not later than 45 days after receiving Debtor received the Reclaimed Goods or (b) no later than 20 days after the Petition Date, if the 45 day period expired after the Petition Date.

**RESPONSE TO ALLEGATION NO. 40:**

Debtors state that the allegations of paragraph 40 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 40.

**ALLEGATION NO. 41:**

Whirlpool is entitled to immediate possession of the Reclaimed Goods from Debtor under Bankruptcy Code § 546(c).

**RESPONSE TO ALLEGATION NO. 41:**

Debtors state that the allegations of paragraph 40 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 41.

## ALLEGATION NO. 42:

Whirlpool has a reclamation right to the Reclaimed Goods based on Whirlpool's Demand, as well as a first priority lien in the Reclaimed Goods and proceeds from Debtor's sale of the Reclaimed Goods.

## RESPONSE TO ALLEGATION NO. 42:

Debtors state that the allegations of paragraph 40 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 42.

## ALLEGATION NO. 43:

The Lenders' purported first priority lien under the Pre-Petition Credit Agreement and DIP Financing Agreement is subordinate to Whirlpool because Lenders are not buyers in the ordinary course, good faith purchasers, or otherwise entitled to a first priority lien under 2-702 of the Uniform Commercial Code or Bankruptcy § 546(c).

## RESPONSE TO ALLEGATION NO. 43:

Debtors state that the allegations of paragraph 40 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 43.

## ALLEGATION NO. 44:

Debtor has not honored Whirlpool's Demand, continues to sell the Reclaimed Goods, and has not paid the proceeds to Whirlpool.

## RESPONSE TO ALLEGATION NO. 44:

Debtors admit that Gregg continues to sell goods received from Whirlpool. Debtors deny the remaining allegations in paragraph 44.

## ALLEGATION NO. 45:

Accordingly, an actual case or controversy exists for which equitable relief is necessary and appropriate under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as Bankruptcy Code §§ 105 and 546(c).

**RESPONSE TO ALLEGATION NO. 45:**

Debtors state that the allegations of paragraph 45 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 45.

**ALLEGATION NO. 46:**

Specifically, but without limitation, an actual case or controversy exists as to the rights of Whirlpool, Debtor, and the other Defendants in the Reclaimed Goods and proceeds from the sale of the Reclaimed Goods.

**RESPONSE TO ALLEGATION NO. 46:**

Debtors state that the allegations of paragraph 46 contain contentions of law for which no response is required; to the extent a response is required, Debtors deny the allegations in paragraph 46.

**ALLEGATION NO. 47:**

Whirlpool will be irreparably harmed unless Whirlpool is provided immediate possession of the Reclaimed Goods from Debtor and the proceeds from the sale of the Reclaimed Goods are segregated for the benefit of Whirlpool. Absent reclamation of the Reclaimed Goods and immediate segregation of all proceeds of the Reclaimed Goods, Debtor will continue to sell the Reclaimed Goods for the benefit of the Lenders.

**RESPONSE TO ALLEGATION NO. 47:**

Denied.

To the extent that the "Wherefore" clauses following paragraph 47 of the Complaint must be answered, Debtors deny that Whirlpool is entitled to the relief requested or to any relief whatsoever.

## SPECIFIC DEFENSES

1.      Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims must be denied to the extent its damages are the result of its own conduct or another party's actions, omissions and/or course of conduct.

3.      Plaintiff's claims are barred because all damages claimed are the result of intervening or superseding causes.

4.      Plaintiff's claims are barred by the doctrines of waiver and estoppel.

5.      Plaintiff's claims are barred because Plaintiff would be unjustly enriched if it would be allowed to recover any part of the damages alleged in the Complaint.

6.      Plaintiff's claims are general unsecured prepetition claims.

7.      Plaintiff's reclamation claims are barred by section 2-702(2) of the Uniform Commercial Code because notice was not timely given.

8.      Plaintiff's claims must be denied pursuant to 11 U.S.C. § 502(d).

9.      The Complaint or any relief sought by Plaintiff is barred, in whole or in part, by such additional defenses as Debtors may have that cannot now be articulated due to the generality of Plaintiff's pleading.  Debtors reserve the right to supplement the foregoing and to raise additional defenses as the case progresses.

WHEREFORE, Debtors pray that Plaintiff's Complaint be dismissed with prejudice and that Debtors be awarded their costs, attorney's fees, and such relief as the Court deems just and proper.

## DEBTORS' COUNTERCLAIM

Debtors file this Counterclaim against Whirlpool.  In support thereof, Debtors state as follows:

## PARTIES

1.      Counterclaim Plaintiffs hhgregg, HHG Distributing, and Gregg Appliances (Debtors) are organized under the laws of the State of Indiana.

2.      On information and belief, Counterclaim Defendant Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.

## JURISDICTION

3.      This Court has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      Venue is proper pursuant to 28 U.S.C. §1409(a).

5.      This Counterclaim is brought pursuant to Rules 7001 and 7013 of the Federal Rules of Bankruptcy Procedure.

6.      The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

## FACTUAL ALLEGATIONS

7.      The Debtors are a multi-regional retailer that provides an extensive selection of premium appliances, consumer electronics, home products and computers and tablets in 220 brick-and-mortar stores in 19 states and online via hhgregg.com.

8.      The Debtors sell appliances, consumer electronics and other products under the hhgregg name.

9.  On March 6, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10.  The Debtors continue to operate their business and manage their properties as debtors in possession.

11.  The Debtors are in the process of closing certain under-performing stores and holding going out of business sales at certain of their retail locations.

**Whirlpool Goods**

12.  Pre-Petition Date, Debtors purchased goods from Whirlpool pursuant to purchase orders issued by Debtors.  Whirlpool invoiced Debtors for the costs of the goods purchased by Debtors.

13.  The Debtors have continued to sell Whirlpool goods since the Petition Date.

14.  Within 90-days prior to the Petition Date, Debtors made payments of approximately $31,086,449.35 to Whirlpool for the costs of goods purchased by Debtors.

**Vendor Support Program**

15.  In the ordinary course of their business, the Debtors enter into various support agreements with their vendors pursuant to which the vendors would offer rebates and cash incentives to the Debtors.

16.  The Debtors and Whirlpool entered into vendor support agreements for 2016 and 2017, which, for 2017, included the terms of a joint sponsorship related to the Indianapolis Motor Speedway (collectively the "Vendor Support Agreements").  True and correct copies of the 2016 and 2017 Vendor Support Agreements are attached hereto as Exhibit A.

17.  Pursuant to the Vendor Support Agreements, Whirlpool agreed to make certain support payments to Debtor, including payments calculated as a percentage of purchases made

by Debtor and payments as part of the joint sponsorship related to the Indianapolis Motor Speedway.

18.    In the ordinary course of business prior to the Petition Date, Whirlpool would pay amounts due under the Vendor Support Agreements to the Debtors.

19.    On April 28, 2017, Debtors sent a written demand to Whirlpool for unpaid amounts owed to Debtors pursuant to the Vendor Support Agreements (the "Vendor Support Demand").  A copy of the Vendor Support Demand is attached hereto as Exhibit B.

20.    To date, no less than $4,812,562 in amounts have accrued as owing to the Debtors by Whirlpool pursuant to the Vendor Support Agreements that have not been paid by Whirlpool. Going forward, additional payments may come due to the Debtors from Whirlpool pursuant to the Vendor Support Agreements.

**Count I**
**Breach of Contract**

21.    The foregoing paragraphs are hereby incorporated as if fully set forth herein.

22.    The Vendor Support Agreements are valid contracts between Whirlpool and the Debtors.

23.    Whirlpool has failed to fully perform under the Vendor Support Agreements by failing to make no less than $4,812,562 in payments owed to the Debtors pursuant to the Vendor Support Agreements.

24.    As Debtors continue to sell Whirlpool goods, amounts will continue to accrue pursuant to the Vendor Support Agreements.

25.    Debtors have been damaged and will be damaged by Whirlpool's failure to make the contractually obligated payments pursuant to the Vendor Support Agreements in an amount to be determined at trial.

## Count II
### Avoidance and Recovery of Preference - Prepetition Payments

26.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

27.     Within 90-days prior to the Petition Date, Debtors made payments of approximately $31,086,449.35 to Whirlpool on account of goods sold by Whirlpool for sale by Debtors (the "Prepetition Payments").

28.     The Prepetition Payments were made for the benefit of Whirlpool.

29.     The Prepetition Payments were made on account of an antecedent debt owed by the Debtors to Whirlpool.

30.     The Prepetition Payments were made while Debtors were insolvent.

31.     The Prepetition Payments were made on or within 90 days before the Petition Date.

32.     As a result of the Prepetition Payments, Whirlpool received more than it would have received if (a) the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the Prepetition Payments had not been made; and (c) Whirlpool had received payment on such debt owed to it by Debtors to the extent provided by the Bankruptcy Code.

33.     Debtors are entitled to avoid the Prepetition Payments under Section 547(b) of the Bankruptcy Code, and to recover the proceeds or the value of the Prepetition Payments under Section 550(a)(1) of the Bankruptcy Code.

## Count III
### Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)

34.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

35.     Whirlpool has asserted certain claims against Debtors in the Complaint.

36.     Pursuant to Section 502(d) of the Bankruptcy Code, Debtors request that the claims asserted by Whirlpool against Debtors be disallowed for Whirlpool's failure to pay the value of the Prepetition Payments, upon determination that such value is recoverable under section 550 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

Debtors hereby reserve all of their rights against Whirlpool or any other party under the Bankruptcy Code and applicable law, including, but not limited to, the right to amend or supplement this Answer and Counterclaim as allowable under applicable law and the orders of this Court, and to assert further motions for relief, responses, replies, counterclaims, and/or defenses or affirmative defenses as the evidence may allow or that may be determined through pre-trial discovery.

## PRAYER

Debtors respectfully request that this Court enter judgment against Whirlpool in favor of Debtors for the following relief:

1.      Awarding judgment against Whirlpool and in favor of Debtors in the full amount of all monies due from Whirlpool to the Debtors under the Vendor Support Agreements;

2.      Awarding judgment that the Prepetition Payments identified herein are avoided and set aside as preferences under Section 547(b) of the Bankruptcy Code;

3.      Awarding judgment directing and ordering that Whirlpool turn over to Debtors the full sum of the Prepetition Payments pursuant to Section 550(a)(1) of the Bankruptcy Code;

4.      Disallowing any and all claims of Whirlpool against Debtors under section 502(d) of the Bankruptcy Code;

5.      Reasonable and necessary attorneys' fees incurred in connection with this litigation;

6.      Costs of court and other recoverable expenses;

7.      Pre-judgment and post-judgment interest;

8.      Such other relief to which Debtors may be justly entitled.

Dated:  May 18, 2017

Respectfully Submitted,

/s/ Adam Arceneaux
Neil. E. Herman (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**          -and-
101 Park Avenue
New York, NY 100178-0060          **ICE MILLER LLP**
Telephone:  (212) 309-6000          Jeffrey A. Hokanson (No. 14579-49)
neil.herman@morganlewis.com          Adam Arceneaux (No. 17219-49)
                                     Sarah L. Fowler (No. 30621-49)
                                     One American Square, Suite 2900
-and-                                Indianapolis, IN 46282-0200
                                     Telephone  (317) 236-2100
Andrew J. Gallo (admitted *pro hac vice*)          Jeff.Hokanson@icemiller.com
**MORGAN, LEWIS & BOCKIUS LLP**          Adam.Arceneaux@icemiller.com
One Federal Street                   Sarah.Fowler@icemiller.com
Boston, MA 02110
Telephone:  (617) 8521-8117
andrew.gallo@morganlewis.com

*Counsel to hhgregg, Inc., HHG Distributing*
*LLC, and Gregg Appliances, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| David H. Conaway | dconaway@slk-law.com |
| John E. Haller | jhaller@slk-law.com |
| Gregory Wagoner | gwagoner@slk-law.com |
| Neil E. Herman | neil.herman@morganlewis.com |
| Jeffrey A. Hokanson | jeff.hokanson@icemiller.com |
| Sarah L. Fowler | sarah.fowler@icemiller.com |
| United States Trustee | ustpregion10.in.ecf@usdoj.gov |

I further certify that on May 18, 2017, a copy of the foregoing was mailed by first class U.S. Mail, postage prepaid, and properly addressed to the following:

N/A

/s/ Adam Arceneaux
Adam Arceneaux