**SO ORDERED: December 4, 2017.**



_____
**Jeffrey J. Graham
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HHGREGG, INC., *et al.*[1], | ) | Case 17-01302-JJG-11 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| _____ | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 17-50104 |
| | ) | |
| HHGREGG, INC., | ) | |
| GREGG APPLIANCES, INC., | ) | |
| HHG DISTRIBUTION, LLC, | ) | |
| WELLS FARGO BANK, NA, | ) | |
| GACP FINANCE CO., LLC, | ) | |
| HILCO MERCANTS | ) | |
|   RESOURCES, LLC, and | ) | |
| GORDON BROTHERS RETAIL | ) | |
|   PARTNERS, LLC., | ) | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); and HHG Distributing LLC (5875).

|  |  )  |
|---|---|
| Defendants. | ) |

## ORDER GRANTING WELLS FARGO BANK'S [DEEMED] MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Wells Fargo Bank, National Association's ("Wells Fargo")[2] *Motion to Dismiss* (the "Motion"), wherein Wells Fargo seeks dismissal of Whirlpool Corporation's ("Whirlpool") *Verified Complaint for Declaratory and Other Relief* (the "Complaint") pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6).[3] The fate of the Motion turns on the effect the 2005 amendment to 11 U.S.C. § 546(c)(1) has on a party's reclamation claim against a debtor whose assets are subject to floating prepetition and postpetition liens. For the reasons stated below,

---

[2] GACP Finance Co., LLC ("GACP") has joined in the Motion.

[3] The Motion presents the Court with a procedural oddity. Federal Rule of Civil Procedure 12(d) (applicable in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7012) provides that "[i]f, on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment ... ." Based on this rule, the Court convened a status conference to inform the parties that the Court intended to deem the Motion as a summary judgment motion because the Motion and responses thereto referred to matters outside the pleadings, namely certain orders entered in the underlying bankruptcy case after the filing of the Complaint. Given those concerns, the Court directed the parties to supplement their respective filings to address to address any potential factual issues. Whirlpool, Wells Fargo and GACP timely filed supplements as requested.

While the parties have not raised this issue, the Court does acknowledge that it may take judicial notice of its own orders and that judicially noticed materials do not compel conversion under Rule 12(d). *See Doss v. Clearwater Title Co.*, 551 F.3d 634 (7th Cir. 2008). However, the Court's use of the materials at issue here – specifically, what is defined herein as the Final DIP Order – goes beyond mere judicial notice in that the Court is relying not just on the existence of the Final DIP Order, but also the truth of the matters stated therein and their effect, and, as such, the Court reasserts its position that the Final DIP Order is "outside the pleadings," necessitating the conversion of the Motion from one under Rule 12(b)(6) to one under Rule 56.

2

the Court finds that the prior floating liens prime the reclamation claim and grants the Motion.

## Jurisdiction and Venue

This Court has jurisdiction over this proceeding under 11 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding under 11 U.S.C. § 157(b)(2). Venue is proper in this jurisdiction under 28 U.S.C. § 1409(a). The parties have each consented to the Court's entry of a final judgment pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012(b).

## Procedural Background and Findings of Fact

Debtors/Defendants hhgregg, Inc., Gregg Appliances, Inc. and HHG Distributing, LLC (together, the "Debtor" or "Debtors") filed voluntary Chapter 11 petitions on March 6, 2017 (the "Petition Date"). As of the Petition Date, Debtor operated 220 brick-and-mortar retail stores in 20 states, selling home appliances, electronics and related services. Whirlpool sold goods to Debtor in the ordinary course of business during the 45 days preceding the Petition Date (the "Whirlpool Goods"). Whirlpool made a timely demand for reclamation – first, by sending a demand letter to Debtor on March 10, 2017, and, second, by filing this adversary proceeding – seeking the return of the Whirlpool Goods or, in the alternative, the proceeds from any post-petition sale of the Whirlpool Goods.

Prior to the Petition Date, certain Debtors had a revolving credit facility (the "Prepetition Credit Agreement") with Wells Fargo, as the administrative agent and collateral agent for certain financial institutions. Wells Fargo's advances under the Prepetition Credit Agreement were secured by first priority floating liens on

substantially all of the Debtor's assets, including inventory, both existing and after-acquired, and the proceeds thereof.

Pursuant to an Order dated March 7, 2017 (the "Interim DIP Order"), the Court granted Debtor authority to obtain up to $80,000,000 in secured financing (the "DIP Loan") with Wells Fargo as the administrative agent and collateral agent and GACP as FILO Agent (the "DIP Lenders") and to utilize Wells Fargo's cash collateral. Pursuant to the Interim DIP Order and as consideration for the DIP Loan, the DIP Lenders were granted "priming first priority" liens on virtually all of Debtor's assets, including existing and after-acquired inventory, and the proceeds thereof (the "DIP Liens"). The DIP Liens were effective as of the Petition Date. The DIP Lenders were also granted a super-priority administrative expense claim. Wells Fargo, in turn, was granted adequate protection in the form of a replacement lien on Debtor's assets, subordinate only to DIP Liens (the "Replacement Liens"), and a super-priority administrative claim subordinate only to the DIP Lenders' administrative claim and a carve out for certain professional fees.

On May 2, 2017, the Court entered a final order (the "Final DIP Order") (together, the Interim DIP Order and Final DIP Order are hereinafter referred to as the "DIP Orders"), which among other things, approved the DIP Loan on a final basis and authorized the use of Wells Fargo's cash collateral, granted the DIP Liens and Replacement Liens, and granted Wells Fargo and the DIP Lenders super-priority administrative claims.

Pursuant to the terms of the DIP Orders, Debtor was to use the DIP Credit Agreement to repay the outstanding indebtedness to Wells Fargo under the Prepetition Credit Agreement – over $66 million – and to finance Debtor's ongoing post-petition operations. Unfortunately, Debtors' reorganization was unsuccessful. Debtor ultimately sold its inventory, including the Whirlpool Goods, pursuant to orders dated April 7, 2017, May 10, 2017, and May 17, 2017 (together, the "Sale Orders").

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

5

U.S. 574, 585-87 (1986)).

## Applicable Statutes

Reclamation is the right of a seller to recover possession of goods delivered to an insolvent buyer. Section 2-702 of the Uniform Commercial Code (the "UCC"), as adopted in most states, provides that when a seller of good discovers that its buyer is insolvent, the seller may seek to reclaim those goods. In order to do so, the seller must first send a written demand to the buyer within 10 days after the buyer's receipt of the goods. The buyer must still have the goods in its possession and the goods must be identifiable and not incorporated into another product. Further, the seller's ability to recovery the goods is subject to the rights of other parties, specifically "buyers in the ordinary course," i.e., customers of the buyer who have purchased the goods and "good faith purchasers."

Within bankruptcy, reclamation rights are further defined by § 546(c) of the United States Bankruptcy Code (the "Code"), which provides:

> Except as provide in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of the case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods—
>
> > (A) not later than 45 days after the date of receipt of such goods by the debtor; or
> >
> > (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

In 2005, § 546(c) was amended in several respects upon the enactment of the Bankruptcy Abuse Prevent and Consumer Protection Act ("BAPCPA"). Significantly, BAPCPA amended § 546(c)(1) to provide explicitly that reclamation rights are "subject to the prior rights of a holder of a security interest in such goods."[4]

## Analysis and Discussion

In the Complaint, Whirlpool argues that Wells Fargo – by continuing to lend under the Prepetition Credit Agreement on the eve of bankruptcy when Wells Fargo allegedly knew that Debtors could not pay vendors – was not acting in good faith and is therefore not entitled to protection under UCC § 2-702. The DIP Lenders and Wells Fargo argue, in turn, that good faith is irrelevant under amended § 546(c) and that Whirlpool's reclamation claim is subject to the DIP Lenders' and Wells Fargo's prior lien rights, rendering the claim essentially worthless.

Article 2 of the UCC does not expressly define "good faith purchaser." Many courts have treated the holder of a prior perfected, floating lien on inventory as a "good faith purchaser" for purposes of § 2-702(3), largely relying on the definition of "purchase" and "purchaser" in UCC §§ 1-203(32) and (33). *See In Arlco, Inc.*, 239 B.R. 261 (Bankr. S.D.N.Y. 1999) (collecting cases). Not all courts and commentators, however, agree with that analysis. *See, e.g., In re Reliable Drug Stores, Inc.*, 70 F.3d 948, 949-50 (7th Cir. 1995) (discussing scholarly debate as to the relative rights of a seller under UCC § 2-702 and a creditor with a security

---

[4] BAPCPA's other amendments to § 546(c) are not relevant here.

7

interest in the goods). Further muddying the waters is that Indiana, unlike many states, only subjects a reclamation claim to a "good faith purchaser" and not specifically to a "lien creditor." Ind. Code. § 26-1-2-702(3); *contrast with* Ga. Code § 11-2-702(3) *and* Ohio Rev. Code. § 1302.76(C).

Whatever difficulties exist in interpreting § 2-702 of the UCC pale in comparison with the quagmire of interpreting BAPCPA's changes to § 546(c). BAPCPA's changes to the Code have been described as "impenetrably vague or simply incomplete" by commentators. *See* Lawrence Ponoroff, *Reclaim This! Getting Credit Seller Rights in Bankruptcy*, 48 U. of Richmond L. Rev. 733, 737 (Jan. 2014) (collecting articles and comments); *see, e.g., In re Phillips*, 382 B.R. 153, 158 (Bankr. D. Mass. 2008); *In re Grydzuk*, 353 B.R. 564, 567 (Bankr. N.D. Ind. 2006); and *In re Kaplan*, 331 B.R. 483, 484 (Bankr. S.D. Fla. 2005). Similarly, BAPCPA's impact on reclamation claims has been deemed "a puzzle." Ponoroff, 48 U. of Richmond L. Rev. at 737. This puzzle, however, has no picture or guide – leaving the Court to piece together reclamation claims and amended § 546(c) as best it can.

Most courts grappling with the interplay of BAPCPA's 546(c) and UCC § 2-702 have held that the 2005 amendments to § 546(c) do not create a federal right of reclamation. *In re Reichhold Holdings US, Inc., et al.*, 556 B.R. 107, 110 (Bankr. D. Del. 2016); *In re Circuit City Stores, Inc.*, 441 B.R. 496, 505 (Bankr. E.D. Va. 2010); *and In re Dana Corp.*, 367 B.R. 409, 416-418 (Bankr. S.D.N.Y 2007). This Court, while admitting the learned reasoning contained in those cases is sound but not

8

ironclad, agrees their conclusion. But while not preempting state law on reclamation, BAPCPA drastically altered how a reclamation claim is treated in bankruptcy. And of particular relevance here is that BAPCPA has eliminated any question of whether a secured lender was a good faith purchaser under § 2-702 of the UCC.

As amended, § 546(c)(1) explicitly renders an otherwise valid reclamation claim under state law subordinate to a secured creditor's prior lien rights – without reference or resort to the UCC to ascertain whether the secured creditor is a good faith purchaser. *See In re Circuit City Stores, Inc.*, 441 B.R. at 509 (holding that BAPCPA's added language to 546(c) makes clear that reclamation claims are subordinate to the prior rights of a holder of a security interest in the subject goods) *and* Ponoroff, 48 U. of Richmond L. Rev. at 754 ("the case law under former section 546(c) holding that the reclamation claim is subject to a prior security interest that attaches to the goods is expressly codified"). In other words, the Court need not accept Whirlpool's invitation to divine whether Wells Fargo and the DIP Lenders are "purchasers" under the UCC or whether they acted in "good faith." Rather, the only relevant inquiry[5] for the Court is whether Wells Fargo and the DIP Lenders

---

[5] For purposes of this opinion, the Court assumes that Whirlpool does, in fact, have a valid reclamation claim under § 2-702 of the UCC. In stating that, the Court recognizes that the procedural posture of the Motion – as one deemed to be a motion for summary judgment – is awkward for both parties. In the Motion, Wells Fargo and the DIP Lenders conceded certain factual issues they might have otherwise contested on summary judgment. In defending the Motion as one under Rule 12(b)(6), Whirlpool was not required to provide evidentiary support for the claims made in the Complaint and did not have a full opportunity even after the Court deemed the Motion to be one for summary judgment to develop factual support for its claims. Cognizant of this, the Court does not wish to prejudice the parties' respective factual or legal positions on any issue other than what the

9

have a valid security interest in the Whirlpool Goods that arose prior to Whirlpool's reclamation claim.

Much ink has been spilled by Wells Fargo and the DIP Lenders arguing that the Prepetition Credit Agreement, the DIP Loan and the DIP Orders are an "integrated transaction" and as such all the liens created thereby are prior interests in the Whirlpool Goods. In support, Wells Fargo and the DIP Lenders point to *Dana Corp.*, which adopted the concept of an integrated transaction. Whirlpool vigorously opposes this position, noting that several courts have rejected the notion of an "integrated transaction" and urges this Court to do the same. *See Reichhold*, 556 B.R. at 111-12 *and In re Phar-Mor*, 301 B.R. 82, 498 (Bankr. N.D. Ohio. 2003).

The Court does not believe that invoking the phrase "integrated transaction" – something that appears to have been coined by judges and not drawn from contract law – magically invokes or dispels the impact of § 546(c). Instead, the relevant inquiry is whether one or more secured creditors had liens in the reclaimed goods that were prior in time to the reclamation demand. As in *Dana Corp.*, the liens here were perfected prepetition under the Prepetition Credit Agreement and postpetition pursuant the DIP Loan signed the same day as the debtor filed for bankruptcy. At no time were Debtor's goods free from a floating lien. This is in contrast with *Reichhold*, where both the prepetition and postpetition liens were satisfied in full, leaving the debtor's collateral lien free and the reclamation claim next in priority.

---

Court is expressly deciding herein, issues the Court believes are either strictly legal in nature or depend on facts not genuinely in dispute.

10

Distinguishing *Phar-Mor* is more difficult as it is factually similar to *Dana Corp.* yet came to the opposite conclusion. The court in *Phar-Mor* found that when a postpetition credit facility satisfied the prepetition facility, the liens granted by the postpetition credit facility were junior to a reclaiming creditor's interests. *Phar-Mor*, 301 B.R. at 498. This Court respectfully disagrees with this conclusion.

Section 546(c) talks about prior rights, and where the prepetition and postpetition liens both relate back to a period before a reclamation claim is made, those lien rights are prior to those of the reclaiming creditor, whose right arises only when a reclamation demand is made.

Such is the case here. Indeed, the Final DIP Order states as follows:

> Based on the findings of fact and ruling herein concerning the integrated nature of the DIP Facility and the Prepetition Financing Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under [11 U.S.C.] Section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

*Final DIP Order* at ¶ X.F.48.i. As in *Dana Corp.*, the lien chain here remains unbroken and prior to Whirlpool's reclamation demand. Prior to the Petition Date, Wells Fargo had a lien on all Debtor's assets pursuant to the Prepetition Credit Agreement. As of the Petition Date, the DIP Lenders were granted the DIP Liens in Debtor's assets, including the Whirlpool Goods and Wells Fargo was granted the Replacement Liens on those same assets by the DIP Loan. When Whirlpool made its reclamation demand the Whirlpool Goods were encumbered by the DIP Lenders' and Wells Fargo's prior interests. The Court therefore concludes that Whirlpool's

11

reclamation claim, even if valid, is subordinate to Wells Fargo's and the DIP Lenders' prior security interests in the Whirlpool Goods.

Whirlpool tries to avert disaster by directing the Court to alleged "savings" provisions in both the Final DIP Order and the April 10, 2017 Sale Order and argues that such provisions preserved Whirlpool's reclamation rights in the Whirlpool Goods. Specifically, the Final DIP Order states that "[n]otwithstanding anything in this Final Order to the contrary: . . . (ii) nothing herein shall impair, extinguish, subordinate or prime any party's rights under 2-702 of the [U.C.C.], subject, however, to section 546(c) of the Bankruptcy Code, and the [DIP Lenders'] rights and entitlements under the Interim [DIP] Order." *Final DIP Order* at ¶ X.G.49. Similarly, the Sale Order states that Whirlpool's "rights, claims and interest" in the Whirlpool Goods are "expressly reserved and will be deemed to attach to any proceeds of the Whirlpool goods regardless of form, application, co-mingling or other disposition of the Whirlpool Goods or such proceeds with the same validity, defects, and priority and/or lack of any of the foregoing, as Whirlpool's Reclamation Demand has in the Whirlpool Goods." *April 10, 2017 Sale Order* at ¶ 35.

The Court agrees that the quoted provisions serve to preserve Whirlpool's rights under UCC § 2-702, but as the Court has already held—and the quoted provisions themselves make clear – those rights are subject to § 546(c). Given the Court's conclusion that § 546(c), as amended by BAPCPA, expressly subordinates an otherwise valid reclamation claim to the prior rights of a secured creditor, the

12

"savings" provisions do nothing to elevate Whirlpool's rights in or to the Whirlpool Goods or the proceeds thereof above those of Wells Fargo and the DIP Lenders.

## Conclusion

Based on the foregoing, the Court concludes that Whirlpool's reclamation rights in the Whirlpool Goods are subordinate to Wells Fargo's and the DIP Lenders' security interests in the Whirlpool Goods. Given that conclusion, the Court further concludes that Whirlpool is not entitled to any of the relief requested in the prayer to the Complaint.[6] The Court will enter a Judgment consistent with this Order contemporaneously herewith.[7]

### # # #

---

[6] Specifically, Whirlpool sought (1) an order directing the DIP Lenders to honor the demand; (2) a declaration that Whirlpool's right and interest in the Whirlpool Goods and the proceeds thereof is first in priority and right; (3) an order prohibiting Debtor from selling or otherwise transferring the Whirlpool Goods; (4) an order directing Debtor and the DIP Lenders to deliver an accounting of the Whirlpool Goods; (5) an order directing Debtor to segregate the Whirlpool Goods and any proceeds thereof; and (6) any other proper relief, including an order direct Debtor to "marshal" sale proceeds such that the DIP Lenders are paid first from proceeds other than from the Whirlpool Goods. It should be noted that to the extent the Court's ruling does not obviate the need to address the Complaint's sixth prayer for relief, the Final DIP Order specifically prohibits marshalling. *See Final Order* at ¶ X.H.51.

[7] The Court notes that Gordon Brothers Retail Partners and Hilco Merchant Resources were previously dismissed from this proceeding upon notice by Whirlpool. That leaves Whirlpools' claims against Debtors. While the Court's ruling herein seemingly resolves those claims, Debtors did not formally join in the Motion. The Court further notes that Debtors have asserted counterclaims against Whirlpool that are not resolved by this ruling. The Court will schedule a pre-trial conference in the near future on the remaining claims.